ORIGINAL
FILED

NOV - 1 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  STEPHEN H. SUTRO (SBN 172168)
   TERRANCE J. EVANS (SBN 227671)
2  **DUANE MORRIS LLP**
   One Market, Spear Tower, Ste 2000
3  San Francisco, CA 94105
   Tel: 415-957-3000
4  Fax: 415-957-3001
   shsutro@duanemorris.com
5  tjevansvans@duanemorris.com

6  Attorneys for Plaintiff
   LinguaLinx Language Solutions, Inc.
7

E-filing

MMC

8

9
                    **UNITED STATES DISTRICT COURT**
10                  **NORTHERN DISTRICT OF CALIFORNIA**

11 LINGUALINX LANGUAGE                )  Case No. CV 07 5575
12 SOLUTIONS, INC. a New York         )
13 Corporation,                       )  VERIFIED COMPLAINT FOR:
                                       )  INJUNCTIVE RELIEF, BREACH OF
14        Plaintiff,                   )  CONTRACT; MISAPPROPRIATION
                                       )  OF TRADE SECRETS (CAL. CIV.
15                                     )  CODE §3426 ET SEQ.);BREACH OF
      v.                              )  DUTY OF LOYALTY AND
16                                     )  FIDUCIARY DUTY; UNFAIR
17 ADRIENNE PARDINI, an                )  COMPETITION (BUS. & PROF.
   individual, and LOQMAN             )  CODE § 17200); INTERFERENCE
18 TRANSLATIONS, a division of        )  WITH CONTRACTUAL RELATIONS;
19 LOQMAN COMMUNICATIONS             )  INTERFERENCE WITH ACTUAL/
   GROUP, LLC,                        )  PROSPECTIVE BUSINESS
20                                     )  RELATIONS; CONSPIRACY; and
21        Defendants.                  )  CONVERSION
                                       )
22                                     )
                                       )
23                                     )  DEMAND FOR JURY TRIAL
                                       )
24

25                      **VERIFIED COMPLAINT**

26        LinguaLinx Language Solutions, Inc. ("LinguaLinx" or "Plaintiff"),

27 hereby brings the following Verified Complaint, pursuant to Rule 65 of the Federal

28

COMPLAINT

DM1\1219743.1

1    Rules of Civil Procedure, for injunctive and other relief against Defendants Adrienne

2    Pardini and Loqman Translations, a division Loqman Communications Group, LLC

3    ("LCG") (collectively referred to as "Defendants") for: (i) Breach Of Contract; (ii)

4    Misappropriation Of Trade Secrets (Cal. Civ. Code §3426 Et Seq.); (iii) Breach Of

5    Duty Of Loyalty And Fiduciary Duty; Unfair Competition (Bus. & Prof. Code §

6    17200); (iv) Interference With Contractual Relations; (vi) Interference With Actual/

7    Prospective Business Relations; (vi) Conspiracy; and (vii) Conversion, and in

8    support thereof, avers as follows:

## I. JURISDICTION

9

10    1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C.

11    § 1332, in that it is a civil action between citizens of different states in which the

12    amount in controversy exceeds $75,000, exclusive of interest and costs. LinguaLinx

13    is a New York Corporation with a principal place of business in New York.

14    Defendants, on information and belief, are each citizens, domiciliaries and residents

15    of the State of California.

## II. THE PARTIES

16

17    2.    Plaintiff LinguaLinx is a corporation organized and incorporated

18    in the State of New York, with its principal place of business at 650 Franklin Street,

19    Schenectady, New York, and transacting business in this judicial district at 22

20    Battery Street, Suite 610, San Francisco, California. LinguaLinx is a corporate

21    citizen of the State of New York.

22    3.    Plaintiff is informed and believes, and on that basis avers, that

23    Defendant LCG, is and at all times referenced herein was, a California limited

24    liability company with its principal place of business located at 5732 San Jose

25    Avenue, Richmond, California 94804.

26    4.    Defendant Adrienne Pardini ("Pardini") is former employee of

27    LinguaLinx. She was employed by LinguaLinx from October 16, 2006, through

28

DMI\1219743.1

1    October 15, 2007. Pardini is a citizen and domiciliary of California last known to

2    reside at 4701 San Leandro Street, Oakland, California 94601.

3

4                                    **III. VENUE**

5        5.    Venue of this action lies in the United States District Court for

6    the Northern District of California pursuant to 28 U.S.C. § 1391(a)(2), in that the

7    events, acts and/or omissions giving rise to the claims set forth herein occurred in the

8    Northern District of California.

9        6.    Venue also lies in the Northern District of California pursuant to

10   28 U.S.C. § 1391(a)(1), in that defendant LCG is doing business in this judicial

11   district, and Pardini resides in and is doing business in this judicial district.

12                   **IV. THE FACTS COMMON TO ALL CLAIMS**

13       7.    LinguaLinx is engaged in the business of, among other things,

14   providing full-service translation services to today's leading corporations, law firms,

15   non-profit organizations and government agencies (hereinafter, "LinguaLinx

16   Products and Services"). LinguaLinx has a worldwide network of clients, which is

17   serviced through its primary office located in Schenectady, New York, and its

18   branch offices in New York City and San Francisco, California.

19       8.    Defendant LCG is engaged in the business of, among other

20   things, providing translations services. As such, LCG is a competitor of LinguaLinx

21   and LinguaLinx has a substantial interest in making sure that LCG does not possess

22   its confidential trade secret and proprietary information.

23       9.    LinguaLinx hired Pardini on October 16, 2006, as a Vendor

24   Manager. As a Vendor Manager, Pardini worked primarily in the main office

25   located in Schenectady, New York and had as her primary duty to secure vendor

26   relationships for LinguaLinx. At some time in early 2007, Pardini was transferred to

27   the sales department of LinguaLinx where, as part of her duties, Pardini was

28   responsible for soliciting and receiving orders and securing clients for, *inter alia,*

1   LinguaLinx's translation services from customers seeking the company's translation
2   services.

3          10.    As part of her employment with LinguaLinx, Pardini had access
4   to certain proprietary and confidential information of LinguaLinx, including trade
5   secrets, business model, client lists, marketing plan and sales strategies.

6          11.    On January 10, 2007, Pardini and LinguaLinx entered into a
7   Confidentiality and Non-Compete Agreement (the "Confidentiality Agreement"). In
8   relevant part, the Confidentiality Agreement (Exhibit "A" hereto) provides, as
9   follows:

10             2. Proprietary Information.

11             (a)    Employee agrees, at all times <u>during the term</u>
12             of the Relationship with Employer and thereafter, to
13             hold in strictest confidence, <u>and not to use</u>, except for
14             the benefit of Employer to the extent necessary to
15             perform Employee's obligations to Employer under the
16             Relationship, or to disclose to any person, firm,
17             corporation or other entity, without written
18             authorization of Employer, <u>any Proprietary Information,</u>
19             as hereinafter defined, of Employer which Employee
20             obtains or creates.  Employee further agrees not to make
21             copies of such Proprietary Information except as
22             authorized by Employer.  Employee understands that
23             "<u>Proprietary Information" means</u> any Employer
24             proprietary information, technical data, trade secrets or
25             know-how, including, but not limited to, research,
26             practice plans, products, services, suppliers, <u>client lists</u>
27             and clients in whatever form and format (including, bill
28             not limited to, <u>clients of Employer on whom Employee</u>

                                    4                     COMPLAINT

called or with whom Employee became acquainted during the Relationship), prices and costs, markets, software, developments, inventions, notebooks, processes, formulas, designs, marketing information, finances, budgets or other business information disclosed to Employee by Employer either directly or indirectly in writing, orally or by drawings or observation of parts or equipment or created by Employee during the period of the Relationship, whether or not during working hours. Employee understands that "Proprietary Information" includes, but is not limited to, information pertaining to any aspects of the Business which is either information not known by actual or potential competitors of Employer or other third parties not under confidentiality obligations to Employer, or is otherwise proprietary information of Employer or its customers or suppliers including, without limitation, lists of translators, interpreters and other vendors. "Proprietary Information" furthermore includes information that LinguaLinx has developed, acquired, organized, compiled or maintained regarding its clients, former clients, and prospective clients while developing and operating its business, including, but not limited to, information relating to their identity, location, personnel, payment habits, credit experience, contract renewal and expiration dates, pricing, and other terms and conditions contained in or directly related to their contracts with LinguaLinx or its predecessors. All

DM1\1219743.1

persons, firms, corporations, and other business enterprises that are users of services and/or products of the type provided by the Business, for whom LinguaLinx performs or performed such services, or to whom LinguaLinx sells or sold such products, or which were actively solicited by LinguaLinx for the sale of such products. Employee further understands that Proprietary Information does not include any of the foregoing items which have become publicly and widely known and made generally available through no wrongful act of Employee or of others who were under confidentiality obligations as to the item or items involved. (emphasis added).

12.     The Confidentiality Agreement further provides:

Third Party Information. Employee recognizes that Employer has received and, in the future, will receive confidential or proprietary information from third parties subject to a duty on Employer's part to maintain the confidentiality of such information and to use it only for certain limited purposes. Employee agrees to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out Employee's work for Employer consistent with Employer's agreement with such third party. (emphasis added).

13.     The Confidentiality Agreement also provides:

Returning Employer Documents. Employee agrees that,

COMPLAINT

1  <u>at the time of termination</u> of the Relationship with

2  Employer, <u>Employee will deliver</u> to Employer (and will

3  not keep in Employee's possession, recreate or deliver

4  to anyone else) <u>any and all devices, records, data, notes,</u>

5  <u>reports, proposals, lists, correspondence, specifications,</u>

6  <u>drawings, blueprints, sketches, laboratory notebooks,</u>

7  <u>materials, flow charts, equipment, other documents or</u>

8  <u>property, or reproductions of any of the aforementioned</u>

9  <u>items developed by Employee pursuant to the</u>

10  <u>Relationship or otherwise belonging to Employer</u>, its

11  successors or assigns.  Employee further agrees that any

12  property situated on Employer's premises and owned by

13  Employer, including, but not limited to, disks and other

14  storage media, filing cabinets or other work areas, is

15  subject to inspection by Employer personnel at any time

16  with or without notice.  In the event of the termination

17  of the Relationship, Employee agrees to sign and

18  deliver the "Termination Certification" annexed hereto

19  and made a part hereof as Exhibit A.  (emphasis added).

20  14.  It also provides:

21  <u>Solicitation of Employees, Consultants, Clients and</u>

22  <u>Other Parties</u>.  Employee agrees that during the term of

23  the Relationship with Employer, and for a period of two

24  (2) years immediately following the termination of the

25  Relationship with Employer for any reason, whether

26  with or without cause, Employee shall not either

27  directly or indirectly solicit, induce, recruit or

28  encourage any of Employer's employees or consultants

to terminate their relationship with Employer, or take away, hire or otherwise engage the services of such employees or consultants, or attempt to solicit, induce, recruit, encourage or take away, employees or consultants of Employer, either for Employee or for any other person or entity.  Further, for a period of two (2) years following termination of the Relationship with Employer for any reason, with or without cause, Employee shall not solicit any client of Employer or licensee of Employer's services, in each case, that are known to Employee, with respect to any business, products or services that are competitive to the products or services offered by Employer or under development as of the date of termination of the Relationship with Employer.

15.    In addition to the Confidentiality Agreement (Exhibit "A" hereto), Pardini received and agreed to be bound by the terms of LinguaLinx's Employee Handbook.  Attached hereto as Exhibit "B" is a true and correct copy of the Employee Handbook.

16.    In relevant part, the Employee Handbook, provides as follows:

**PROTECTING COMPANY INFORMATION**

Protecting our company's information is the responsibility of every employee, and we all share a common interest in making sure information is not improperly or accidentally disclosed.  <u>Do not discuss the company's confidential business with anyone who does not work with us.</u>  You may be required to assign a non-compete and/or a nondisclosure agreement as a

1            condition of your employment, in accordance with state

2            and federal law. (emphasis added).

3      17.    In addition, the Employee Handbook provides as follows:

4            **CONFLICTS OF INTEREST/CODE OF ETHICS**

5            A company's reputation for integrity is its most

6            valuable asset and is directly related to the conduct of

7            its officers and other employees. Therefore, <u>employees</u>

8            <u>must never use their position with the company, or any</u>

9            <u>of its clients, for private gain, to advance a personal</u>

10           <u>interest or to obtain favors or benefits for themselves,</u>

11           members of their families or any other individuals,

12           corporation or business entities. (emphasis added).

13                   *      *      *

14           Employees of the company shall conduct their personal

15           affairs such that their duties and responsibilities to the

16           company are not jeopardized and/or legal questions do

17           not arise with respect to their associations or work with

18           the company.

19      18.    Pardini acknowledged receipt of the Employee Handbook, and

20 acknowledged that she read and understood it. Attached hereto as Exhibit "C" is

21 Pardini's LinguaLinx Employee Handbook acknowledgement.

22      19.    In or around the first half of 2007, Pardini and LinguaLinx began

23 discussing the possibility of Pardini being relocated to California for the purpose of

24 opening a LinguaLinx office there. Pardini communicated to LinguaLinx that she

25 desired this relocation because she is a native of California. *See also* Pardini's

26 Curriculum Vitae, attached hereto as Exhibit "D."

27      20.    Prior to the this time period, LinguaLinx did not have an office in

28 California, but thought its presence in California would enable it to better serve its

DM1\1219743.1

1    substantial—and previously developed—California client base, and to further
2    develop additional business on the West Coast.

3          21.    In or around the Summer of 2007, LinguaLinx and Pardini agreed
4    that LinguaLinx would open a California office, and that Pardini would manage and
5    operate the new office.

6          22.    As part of the office opening, Pardini was promoted and given the
7    title "West Coast Account Executive."  In connection with her promotion, Pardini
8    received a substantial increased salary to $60,000 plus commission.  In addition,
9    LinguaLinx leased office space in San Francisco to create an office from which
10   Pardini would be able to be stationed at the rate of $900 per month.  LinguaLinx
11   made substantial investments to equip the new San Francisco office space.  Finally,
12   LinguaLinx paid substantial personal moving expenses for Pardini to relocate herself
13   to California.  Pardini began working in LinguaLinx's new San Francisco office on
14   or about June 25, 2007.

15         23.    However, despite Pardini's obligations to LinguaLinx, Pardini
16   failed to dedicate her full efforts to LinguaLinx's California office.

17         24.    Rather, in and before October 2007, Pardini, in violation of the
18   Confidentiality Agreement and the terms of the Employee Handbook, began secretly
19   planning with LCG to divert LinguaLinx customers to LCG and for Pardini to
20   eventually move to the employment of LCG.

21         25.    As part of this secret plan:

22         (a)    Pardini forwarded information and terms of a number of potential
23   business opportunities to LinguaLinx from her assigned LinguaLinx email account to
24   her personal Yahoo! email account for the purpose of forwarding said business
25   opportunities to LCG.  Attached hereto as Exhibit "E" is a true and correct copy of
26   an email dated October 3, 2007, evidencing one such diversion of a customer and/or
27   corporate opportunity to LCG.

28

DMI\1219743.1

(b)    Pardini invited and met with representatives of LCG in the offices of LinguaLinx's California office for the purpose of furthering their secret plan to divest from LinguaLinx their business opportunities and customer list and base and to discuss the day-to-day operations and activities of LinguaLinx for the purpose of duplicating LinguaLinx's business plan and model. Attached hereto as Exhibit "F" is a true and correct copy of a string of emails dated October 5, 2007, through October 10, 2007, evidencing the planning and occurrence of the aforesaid meeting, which was, as stated by LCG representative, to "talk and scheme."

(c)    LCG set up for Pardini a LCG email account to enable Pardini to forward LinguaLinx accounts and business leads to LCG. Attached hereto as Exhibit "G" is a true and correct copy of an email dated October 13, 2007, in which Pardini requests LCG to set up for her an email account to forward accounts and business information to LCG, and an October 14, 2007, evidencing the creation of Pardini's LCG email account.

(d)    On October 10, 2007, at 1:36:41 PM, Pardini forwarded to her personal email account an electronic document entitled "contacts.doc," for the purpose of utilizing the electronic documents for Defendants' benefit.    The contract.doc document is a confidential 44-page list of LinguaLinx's client contacts. Attached hereto as Exhibit "H" is a true and correct copy of the email evidencing the "contract.doc document" being emailed from Pardini to herself.

(e)    Pardini also forwarded LinguaLinx sales leads to LCG. Attached hereto as Exhibit "I" is an email dated October 14, 2007, evidencing the forwarding of sales leads by Pardini to LCG.

(f)    Pardini accessed and copied LinguaLinx's "Archived Proposals," for the purpose of secreting to LCG LinguaLinx's client base. Attached hereto as Exhibit "J" is a screen shot of Pardini's computer evidencing Pardini's accessing and copying the "Archived Proposals."

DM1\1219743.1

(g)    Pardini created a ".rar archive file," a significantly large exportable electronic document for the purpose of secreting to LCG LinguaLinx's confidential and proprietary information. Attached hereto as Exhibit "K" is a true and correct copy of a screen shot of Pardini's computer evidencing Pardini's creation of the ".rar archive file."

(h)    Pardini accessed and copied for her own use, and the use of LCG, a list of LinguaLinx's California contacts.

(j)    Other acts not yet discovered by LinguaLinx.

26.    When the secret plan of Pardini was discovered by LinguaLinx, LinguaLinx terminated Pardini on October 15, 2007.

27.    Following her termination, Pardini began her employment with LCG, in a similar capacity as her capacity with LinguaLinx.

28.    At all times relevant, Pardini failed to disclose to LinguaLinx, and otherwise continued to mislead LinguaLinx, concerning Defendants' scheme to sabotage, decimate, incapacitate and divert the business of LinguaLinx, and to destroy, take, remove or otherwise misappropriate the confidential and trade secret customer list, sales leads, and business model information belonging to LinguaLinx, and to divert this information to LCG.

29.    With the information misappropriated by Pardini and LCG, customers of LinguaLinx have been identified, targeted and solicited by LCG and Pardini for the benefit of LCG, with and through the use and disclosure of LinguaLinx's confidential and trade secret records and data and/or the information contained therein.

30.    LinguaLinx spends a significant amount of time and resources in developing and maintaining information regarding its accounts, clients, and potential clients.

DMI\1219743.1

31.    The customer information compiled in LinguaLinx's customer database is valuable information that gives LinguaLinx a significant advantage in the marketplace.

32.    LinguaLinx believes, and therefore avers, that Pardini and LCG conspired to: (a) target, solicit, and divert the actual and prospective customers of LinguaLinx from LinguaLinx to LCG; (b) use, rely upon, take advantage of, and otherwise misappropriate the confidential customer and marketing information of LinguaLinx; and (c) disrupt LinguaLinx's San Francisco operations.

33.    In addition to the above, Pardini has misappropriated and/or converted for improper use, the property of LinguaLinx, including a promotional display utilized by LinguaLinx in marketing to perspective clients; and a LinguaLinx cellular phone.

## V.  INJUCTIVE RELIEF

34.    The averments of Paragraphs 1 through 32 are incorporated by reference herein with the same force and effect as if set forth in full below.

35.    By virtue of the foregoing, LinguaLinx has demonstrated a likelihood of success on the merits, and that a balancing of the equities favors the issuance of an injunction against Defendants.

36.    Unless Defendants are temporarily and preliminarily enjoined from the foregoing conduct, LinguaLinx will be irreparably harmed by:

        (a)    Disclosure of trade secrets, customer lists, business methods and strategies, and other confidential information which are solely the property of LinguaLinx and its clients; and

(b) Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

37. LinguaLinx has no adequate remedy at law.

38. WHEREFORE, LinguaLinx respectfully requests that:

(a) For purposes of protecting LinguaLinx's confidentiality and trade secret rights, Pardini's contractual non-use or disclosure obligations, the duty of loyalty of Plaintiff's former employees, and to neutralize the acts of unfair competition in which Defendants have engaged, that the Court Order that each of the named Defendants be immediately enjoined and restrained, both directly and indirectly, and whether acting alone or in concert with others, including with any officer, agent, employee or representative of Defendants, from the date of a hearing and thereafter until further Order of the Court, from: (i) soliciting or transacting business with any individual, company or entity which was identified on the information derived or received through the Defendants' illegal conduct (hereinafter, the "LinguaLinx Customers"); (ii) soliciting, attempting to solicit, conducting, accepting or engaging in business with LinguaLinx Customers; and (iii) using, disclosing, or transmitting for any purpose, including for the purpose of soliciting, preparing to solicit or transacting business with any of the LinguaLinx Customers.

(b) The Defendants be ordered to return to LinguaLinx all its trade secrets, confidential business information, and promotional display.

DM1\1219743.1

## COUNT I - BREACH OF CONTRACT
## (AGAINST PARDINI)

39.    The allegations of Paragraphs 1 through 38 are incorporated herein by reference with the same force and effect as if set forth in full below.

40.    Pardini has violated and/or is preparing to violate the terms of the Confidentiality Agreement and Employee Handbook with LinguaLinx.

41.    As a consequence of the foregoing, LinguaLinx has suffered and will continue to suffer irreparable harm and loss.

## COUNT II -- MISAPPROPRIATION OF TRADE SECRETS UNDER CALIFORNIA UNIFORM TRADE SECRETS ACT, CAL. CIV. CODE §§ 3426 ET SEQ.
## (AGAINST ALL DEFENDANTS)

42.    The allegations of Paragraphs 1 through 41 are incorporated herein by reference with the same force and effect as if set forth in full below.

43.    As described more particularly in the foregoing, the books and records of LinguaLinx, the confidential customer list and account information contained therein, including the identity of LinguaLinx customers, their names and addresses, business and financial dealings, their prior transactions, and other confidential and proprietary information, are trade secrets subject to protection under the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 et seq., and relevant precedents and standards established thereunder.

44.    This is a compilation of information that derives independent economic value from not being accessible—through improper means—to competitors such as the Defendants, who can profit from its explicit and/or implicit and/or intentional and/or inevitable use or disclosure.

45.    LinguaLinx has taken reasonable and adequate measures under the circumstances to maintain the secrecy of this information.

DMI\1219743.1

46.    The foregoing conduct of Defendants constitutes an actual, planned and/or inevitable misappropriation and misuse of LinguaLinx's confidential, trade secret information.

47.    As a consequence of the foregoing, LinguaLinx has suffered and will continue to suffer irreparable harm and loss.

## COUNT III -- BREACH OF DUTY OF LOYALTY AND FIDUCIARY DUTY
## (AGAINST PARDINI)

48.    The allegations of Paragraphs 1 through 47 are incorporated herein by reference with the same force and effect as if set forth in full below.

49.    Upon information and belief, Pardini has violated the common law duty of loyalty and fiduciary duty arising under her employment relationship with LinguaLinx, in that, while employed by LinguaLinx, she schemed with and on behalf of a LinguaLinx competitor to misappropriate LinguaLinx's trade secrets, confidential business information and the confidential information contained in LinguaLinx's customer and business records, and to otherwise act in a manner harmful to the employer whose best interests she was under a duty to promote.

50.    As a consequence of the foregoing, LinguaLinx has suffered and will continue to suffer irreparable harm and loss.

## COUNT IV -- UNFAIR COMPETITION
## (AGAINST ALL DEFENDANTS)

51.    The allegations of Paragraphs 1 through 50 are incorporated herein by reference with the same force and effect as if set forth in full below.

52.    Defendants, in concert with one another, and in violation of Cal. Bus. Code § 17200 et. seq., have improperly conspired with and/or assisted one another in improperly obtaining for their own use LinguaLinx's customer list and account records, and have committed other acts that Defendants knew or intended or should have known would cause injury and harm to LinguaLinx.

DM1\1219743.1

53.    Defendants, both alone and/or in concert with one another, are using confidential and trade secret information concerning LinguaLinx's customers and business information to destroy, reduce or damage the capacity and business of LinguaLinx's California office.

54.    Defendants conducted and orchestrated their acts in secrecy, and in violation of their obligations to LinguaLinx, to protect and otherwise act in the best interests of LinguaLinx and in further violation of their employee and/or management duties of loyalty.

55.    Defendants' actions and conduct further violate their contractual and statutory duties to maintain the confidential and/or trade secret nature of information concerning LinguaLinx's customers, business, and employees, and not to use or disclose such information to or for the benefit of any competitor of LinguaLinx or other third party including LCG.

56.    By virtue of the acts and omissions of Defendants, and each of them, the Defendants have engaged in unfair competition within the meaning of California's Business and Professions Code Section 17200, thereby entitling Plaintiff to injunctive and other relief and damages as provided by Business and Professions Code Section 17203.

57.    Defendants'    use,    disclosure,    and/or    misappropriation    of LinguaLinx's confidential and trade secret information, and Defendants' deliberate and intentional violation of their contractual obligations to LinguaLinx, and/or Defendants' solicitations and methods of solicitation of LinguaLinx's clientele, has resulted in, comprise and/or will inevitably result in their commission of acts of unfair competition.

58.    Defendants' acts of actual and/or threatened unfair competition are without justification, and are being committed through improper means, and have proximately caused or will inevitably cause injury to LinguaLinx, specifically

1  including immediate and irreparable harm for which there is no adequate remedy at
2  law.

3          59.    As a consequence of the foregoing, LinguaLinx has suffered and
4  will continue to suffer irreparable harm and loss.

5          **COUNT V -- INTERFERENCE WITH ACTUAL AND PROSPECTIVE**
6                          **BUSINESS RELATIONS**
7                       **(AGAINST ALL DEFENDANTS)**

8          60.    The allegations of Paragraphs 1 through 59 are incorporated
9  herein by reference with the same force and effect as if set forth in full below.

10         61.    Defendants have intentionally interfered with LinguaLinx's
11  actual business relationships and/or those business relationships where LinguaLinx
12  had a reasonable probability of entering into, without justification, and by the
13  utilization of improper means, including, *inter alia*, by using LinguaLinx's
14  confidential customer list and account information, by violating or encouraging
15  violation of their confidentiality and non-disclosure agreements, by otherwise using,
16  affirmatively and inevitably, the confidential and trade secret information concerning
17  LinguaLinx's customers to obtain an improper competitive advantage, and by
18  breaching their employee duties of loyalty to LinguaLinx.

19         62.    Defendants are interfering with the actual and prospective
20  contractual relations between LinguaLinx and its customers, and Defendants have
21  solicited and diverted the business of LinguaLinx customers, and are planning to
22  solicit LinguaLinx customers, with and through the use of misappropriated records,
23  documents, computer files and/or information, and are otherwise marketing
24  themselves, implicitly or explicitly, to LinguaLinx customers.

25         63.    As a consequence of the foregoing, LinguaLinx has suffered and
26  will continue to suffer significant and irreparable harm and loss.

27

28

## COUNT VI -- INTERFERENCE WITH CONTRACTUAL RELATIONS
## (AGAINST LCG)

64.    The allegations of Paragraphs 1 through 63 are incorporated herein by reference with the same force and effect as if set forth in full below.

65.    LCG has intentionally sought to interfere with the performance of the contractual obligations owed by Pardini to LinguaLinx.

66.    At all material times, LCG was aware that LinguaLinx had contractual relationships with Pardini, by which Pardini was to protect LinguaLinx's confidential and/or trade secret property and preserved and protected for LinguaLinx the probability of future economic benefit to LinguaLinx.

67.    With full knowledge of such contractual relationships and the material terms of those relationships, Defendants intentionally solicited, directed, assisted, combined, and encouraged Pardini to breach her employment agreements as set forth above.

68.    LinguaLinx alleges, on information and belief, that both before and after Pardini's termination of employment with LinguaLinx, Pardini proceeded, at the request of LCG, to breach her employee duties of loyalty, her duty to act in LinguaLinx's best interests, to protect LinguaLinx's trade secret and confidentiality obligations and interests, and to protect LinguaLinx against unfair competition and imminent harm.

69.    As a proximate result of the wrongful and unjustified acts of LCG, LinguaLinx has sustained and will continue to sustain damages. The precise nature and amount of such accrued and continuing damages are not known to LinguaLinx and cannot be ascertained by it at the present time, but such damages are, on information and belief, substantial and in excess of the jurisdictional minimum of this Court and are otherwise irreparable and incalculable.

70.    In committing the acts alleged and described herein, LCG is guilty of oppression, fraud, and malice in that it intentionally and wrongfully

DMI\1219743.1

interfered with the contractual, trade secret, duty of loyalty, fiduciary duties and other obligations of LinguaLinx's employees to LinguaLinx.    LinguaLinx is therefore entitled to payment of damages in a sufficient sum to punish LCG, to set an example, and to deter such conduct in the future.

## COUNT VII -- NEGLIGENT INTERFERENCE WITH CONTRACTUAL RELATIONS

### (AGAINST LCG)

71.    Plaintiff realleges and incorporates by reference paragraphs 1 through 70 of this Complaint as set forth above.

72.    At all material times, LCG was aware that LinguaLinx had contractual relationships with Pardini, each of which protected its confidential and/or trade secret property, and preserved and protected for LinguaLinx a probability of future economic benefit to LinguaLinx.

73.    With full knowledge of such contractual relationships and the material terms of the relationships, LCG negligently solicited, directed, assisted and encouraged Pardini to breach her agreements as set forth above.

74.    LCG's actions have been and continue to be taken deliberately, and without privilege or justification.

75.    As a consequence of the foregoing, LinguaLinx has suffered and will continue to suffer significant and irreparable harm and loss.

## COUNT VIII -- CONSPIRACY TO MISAPPROPRIATE TRADE SECRETS, BREACH THE DUTY OF LOYALTY AND FIDUCIARY DUTY, UNFAIRLY COMPETE, INTERFERE WITH LINGUALINX'S ACTUAL AND PROSPECTIVE BUSINESS RELATIONS, INTERFERE WITH LINGUALINX'S CONTRACTUAL RELATIONS

### (AGAINST ALL DEFENDANTS)

76.    The allegations of Paragraphs 1 though 75 are incorporated herein by reference with the same force and effect as if set forth in full below.

77.    Defendants, and each of them, without the knowledge and consent of LinguaLinx, conspired to unfairly and unlawfully compete with LinguaLinx, and to interfere intentionally with LinguaLinx's advantageous business relationships and contractual relationships.    In the furtherance of said conspiracy, Defendants, and each of them, engaged in the conduct alleged herein.

78.    As a direct and proximate result of the aforementioned unlawful agreement and conspiracy, and Defendants' acts and omissions alleged herein, LinguaLinx has sustained and will continue to sustain damages.    The precise nature and amount of such accrued and continuing damages is not known to LinguaLinx, and cannot be ascertained by it at the present time, but such damages are, on information and belief, substantial, and in excess of the jurisdictional minimum of this Court, and are otherwise irreparable and incalculable.

79.    In connection with the matters and things herein alleged, Defendants, and each of them, are guilty of oppression, fraud, and malice, and such oppression, fraud, and malice has been directed, authorized, and ratified by each of the Defendants herein.    LinguaLinx is therefore entitled to punitive damages in an amount appropriate to punish and make an example of Defendants and each of them.

80.    Defendants have willfully and maliciously conspired with one another and/or other third persons or parties as yet unknown to misappropriate LinguaLinx's trade secrets, to unfairly compete with LinguaLinx, to convert LinguaLinx's confidential business information, to induce Pardini to fail in her obligation to act in LinguaLinx's best interests during the period before her termination, to breach her contractual confidentiality and non-disclosure obligations to LinguaLinx, and to interfere with LinguaLinx's actual and prospective business relationships with its actual and prospective customers.

81.    The above referenced actions have been undertaken with the intent to injure LinguaLinx in its person and property and in a way not competent for one alone.

82.    Defendants' actions have been taken deliberately, and without privilege or justification.

83.    As a direct and proximate consequence of the foregoing, LinguaLinx has suffered and will continue to suffer injury, irreparable harm and loss.

## COUNT IX -- CONVERSION

## (AGAINST PARDINI)

84.    The allegations of Paragraphs 1 though 83 are incorporated herein by reference with the same force and effect as if set forth in full below.

85.    Pardini misappropriated LinguaLinx's promotional display.

86.    The promotional display was purchased by LinguaLinx at a cost of $1,674.00.

87.    In addition, Pardini misappropriated LinguaLinx's cellular telephone and related equipment.

88.    The value of the cellular telephone and related equipment is $410.35.

89.    The return of the promotional display, cellular telephone, and related equipment was demanded but, despite this demand, Pardini has converted the promotional display, cellular telephone, and related equipment for her own use.

**WHEREFORE**, by virtue of the foregoing acts complained of in Counts I, II, III, IV, V, VI, VII, VIII and IX, LinguaLinx demands judgment in its favor and against Defendants for temporary, preliminary and permanent injunctive relief, together with damages for all violations and breaches of LinguaLinx's rights, exemplary and/or punitive damages based thereon, disgorgement, payment of LinguaLinx's attorneys fees, and all such other and further relief and remedies as are

///

///

///

COMPLAINT

DM1\1219743.1

justified by the evidence presented at the hearings and ultimate trial in this proceeding.

Respectfully submitted,

DUANE MORRIS LLP

Dated: November 1, 2007

TERRANCE J. EVANS (SBN 227671)
One Market, Spear Tower, Ste 2000
San Francisco, CA 94105
Tel: 415-957-3000
Fax: 415-957-3001

OF COUNSEL:
Thomas T. Loder
Brett L. Messinger
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103-7396
Tel. (215) 979-1246/1153/1866
Fax. (215) 979-1020

Attorneys for Plaintiff
LinguaLinx's Language Solutions, Inc.

DM1\1219743.1

## VERIFICATION OF DAVID SMITH

The undersigned, being duly sworn, hereby deposes and says:

1.    That I am over the age of eighteen and I believe in the obligations of an oath;

2.    That I am the owner LinguaLinx Language Solutions, Inc.;

3.    That my knowledge and representation of the facts set forth in the foregoing Verified Complaint in the above-entitled action are true and accurate to the best of my knowledge, information and belief based upon my personal knowledge or, in addition to or instead of my personal knowledge, based upon the records and reports received by me in and from LinguaLinx records maintained in the ordinary course of business and reports given to me by LinguaLinx employees in the ordinary course of their duties and mine; and

4.    That I declare under penalty of perjury under the laws of the State of California and the laws of the United States of America that the foregoing is true and correct and, further, that I submit this Verified Complaint under oath and subject to the penalties applicable to sworn and unsworn declarations to authorities.

David Smith

DM1\1217478.2