

## CONFIDENTIALITY AND
## NONCOMPETE AGREEMENT

**THIS CONFIDENTIALITY AND NONCOMPETE AGREEMENT** (this "Agreement"), dated as of the _10ᵗʰ_ day of _January_, 2007, is by and between LinguaLinx Language Solutions, Inc. ("LinguaLinx"), a corporation duly-organized and validly existing under the laws of the State of New York with a principal place of business at 650 Franklin Street, Schenectady, New York 12305 and _Adrienne Paroline_ ("Employee"), an individual with an address at _____. LinguaLinx and Employee are sometimes referred to herein, individually, as a "party" and, collectively, as the "parties."

### WITNESSETH

**WHEREAS,** LinguaLinx currently conducts business which includes the provision of translation, interpretation and multilingual services in over one hundred (100) languages (collectively, the "Business");

**WHEREAS,** LinguaLinx conducts the Business throughout the United States as well as throughout the world;

**WHEREAS,** Employee is experienced in furnishing support in the field of the Business;

**WHEREAS,** LinguaLinx believes that Employee's skills are beneficial to LinguaLinx; and

**WHEREAS,** the parties enter into this Agreement as a condition of Employee becoming employed by LinguaLinx, or any of its current or future subsidiaries, affiliates, successors or assigns (hereinafter, collectively, "Employer"), and as a condition of Employee's employment with Employer and Employee's receipt of compensation now and hereafter paid to Employee by Employer.

**NOW, THEREFORE,** in consideration of the mutual covenants and the promises herein set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Employer and Employee hereby agree as follows:

1.     Employment Relationship.   Employee understands and acknowledges that this Agreement does not alter, amend or expand upon any rights Employee may have to continue in the employ of, with, or the duration of Employee's employment with Employer under existing agreements between Employer and Employee, if any, or under applicable law. Any employment relationship between Employer and Employee, whether commenced prior to or upon the date of this Agreement, shall be referred to herein as the "Relationship."



-2-

2.    Proprietary Information.

(a)    Employer Information.  Employee agrees, at all times during the term of the Relationship with Employer and thereafter, to hold in strictest confidence, and not to use, except for the benefit of Employer to the extent necessary to perform Employee's obligations to Employer under the Relationship, or to disclose to any person, firm, corporation or other entity, without written authorization of Employer, any Proprietary Information, as hereinafter defined, of Employer which Employee obtains or creates.  Employee further agrees not to make copies of such Proprietary Information except as authorized by Employer.  Employee understands that "Proprietary Information" means any Employer proprietary information, technical data, trade secrets or know-how, including, but not limited to, research, practice plans, products, services, suppliers, client lists and clients in whatever form and format (including, but not limited to, clients of Employer on whom Employee called or with whom Employee became acquainted during the Relationship), prices and costs, markets, software, developments, inventions, notebooks, processes, formulas, designs, marketing information, finances, budgets or other business information disclosed to Employee by Employer either directly or indirectly in writing, orally or by drawings or observation of parts or equipment or created by Employee during the period of the Relationship, whether or not during working hours.  Employee understands that "Proprietary Information" includes, but is not limited to, information pertaining to any aspects of the Business which is either information not known by actual or potential competitors of Employer or other third parties not under confidentiality obligations to Employer, or is otherwise proprietary information of Employer or its customers or suppliers including, without limitation, lists of translators, interpreters and other vendors "Proprietary Information" furthermore includes information that LinguaLinx has developed, acquired, organized, compiled or maintained regarding its clients, former clients, and prospective clients while developing and operating its business, including, but bit limited to, information relating to their identity, location, personnel, payment habits, credit experience, contract renewal and expiration dates, pricing, and other terms and conditions contained in or directly related to their contracts with LinguaLinx or its predecessors.  All persons, firms, corporations, and other business enterprises that are users of services and/or products of the type provided by the Business, for whom LinguaLinx performs or performed such services, or to whom LinguaLinx sells or sold such products, or which were actively solicited by LinguaLinx for the sale of such products.  Employee further understands that Proprietary Information does not include any of the foregoing items which have become publicly and widely known and made generally available through no wrongful act of Employee or of others who were under confidentiality obligations as to the item or items involved.

(b)    Prior Obligations.  Employee represents that Employee's performance of all terms of this Agreement, as an employee of Employer, have not been breached and/or will not breach any agreement to keep in confidence proprietary information, knowledge or data acquired by Employee prior or subsequent to the commencement of the Relationship with Employer, and Employee will not disclose to Employer or use any confidential or non-public proprietary information or material belonging to any previous client, employer or any other party.  Employee will not induce Employer to use any confidential or non-public proprietary information, or material belonging to any previous client, employer or any other party.

-3-

(c)    Third Party Information.    Employee recognizes that Employer has received and, in the future, will receive confidential or proprietary information from third parties subject to a duty on Employer's part to maintain the confidentiality of such information and to use it only for certain limited purposes. Employee agrees to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out Employee's work for Employer consistent with Employer's agreement with such third party.

3.    Returning Employer Documents.    Employee agrees that, at the time of termination of the Relationship with Employer, Employee will deliver to Employer (and will not keep in Employee's possession, recreate or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, laboratory notebooks, materials, flow charts, equipment, other documents or property, or reproductions of any of the aforementioned items developed by Employee pursuant to the Relationship or otherwise belonging to Employer, its successors or assigns. Employee further agrees that any property situated on Employer's premises and owned by Employer, including, but not limited to, disks and other storage media, filing cabinets or other work areas, is subject to inspection by Employer personnel at any time with or without notice. In the event of the termination of the Relationship, Employee agrees to sign and deliver the "Termination Certification" annexed hereto and made a part hereof as **Exhibit A**.

4.    Notification to Other Parties.    In the event that Employee leaves the employ of Employer, Employee hereby consent to notification by Employer to Employee's new employer about Employee's rights and obligations under this Agreement.

5.    Solicitation of Employees, Consultants, Clients and Other Parties.    Employee agrees that during the term of the Relationship with Employer, and for a period of two (2) years immediately following the termination of the Relationship with Employer for any reason, whether with or without cause, Employee shall not either directly or indirectly solicit, induce, recruit or encourage any of Employer's employees or consultants to terminate their relationship with Employer, or take away, hire or otherwise engage the services of such employees or consultants, or attempt to solicit, induce, recruit, encourage or take away, employees or consultants of Employer, either for Employee or for any other person or entity. Further, for a period of two (2) years following termination of the Relationship with Employer for any reason, with or without cause, Employee shall not solicit any client of Employer or licensee of Employer's services, in each case, that are known to Employee, with respect to any business, products or services that are competitive to the products or services offered by Employer or under development as of the date of termination of the Relationship with Employer.

7.    Noncompetition.    During the Specified Period, as hereinafter defined, Employee shall not, whether alone or in association with any other person, directly or indirectly; or

(a)    Engage in any business in the Specified Areas, as hereinafter defined, that is competitive with any aspect of the Business that is being conducted or planned by Employee at the time Employee's employment with Employer terminates.

-4-

(b)    Have any interest or association (including, without limitation, as a shareholder, partner, director, officer, employee, consultant, sales representative, supplier, agent or lender) in or with any person engaged in a business in the Specified Areas that Employee is prohibited from engaging in pursuant to clause (a) above; provided, however, that the foregoing shall not prohibit Employee from owning securities of any publicly traded company that is engaged in any such business as long as Employee does not own at any time five percent (5%) or more of any class of the equity securities of such company.

For purposes of the foregoing, the "Specified Areas" means all counties in New York State, the County of Berkshire in Massachusetts, the County of Litchfield in Connecticut and the County of Bennington in Vermont. For the purpose of the foregoing, the "Specified Period" means two (2) years from the time Employee's employment with Employer terminates.

8.    Representations and Covenants.

(a)    Facilitation of Agreement.  Employee agrees to execute promptly any proper oath or verify any proper document required to carry out the terms of this Agreement upon Employer's written request to do so.

(b)    Conflicts.  Employee represents that Employee's performance of all the terms of this Agreement does not, and will not, breach any agreement Employee has entered into, or will enter into with any third party, including without limitation any agreement to keep in confidence proprietary information acquired by Employee in confidence or in trust prior to commencement of the Relationship with Employer.

(c)    Voluntary Execution.  Employee certifies and acknowledge that Employee has carefully read all of the provisions of this Agreement, and that Employee understands and will fully and faithfully comply with such provisions.

9.    Specific Performance.  The parties agree that money damages would be an inadequate remedy for any breach of any of the provisions of this Agreement. Employer may, in addition to other available rights and remedies, apply to any court of competent jurisdiction for specific performance and/or injunctive relief in order to enforce, or prevent any violation of, any of the provisions of such sections (without posting a bond or other security), and Employee hereby consents to the jurisdiction of any such court.

10.    Enforceability.  The parties agree that the covenants set forth herein are reasonable and valid in temporal, topical and geographical scope and in all other respects. If at any time a court holds that the restrictions stated in this Agreement are unreasonable or otherwise unenforceable under circumstances then existing, the parties agree that the maximum temporal, topical or geographical scope determined to be reasonable under such circumstances by such court will be substituted for the stated temporal, topical or geographical scope herein.

11.    General Provisions.

(a)    Governing Law.  The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the State of New York, without giving effect to the principles of conflict of laws.

-5-

(b)    Entire Agreement.  This Agreement sets forth the entire agreement and understanding between the Employer and Employee relating to the subject matter herein and merges all prior discussions between us.  No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by both parties.    Any subsequent change or changes in Employee's duties, obligations, rights or compensation will not affect the validity or scope of this Agreement.

(c)    Severability. If any provision of this Agreement becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable or void, this Agreement shall continue in full force and effect without such provision, and this Agreement shall be construed to the fullest extent possible as to give effect to the intentions of the provision found to be unenforceable or invalid.

(d)    Successors and Assigns.    This Agreement will be binding upon Employee's heirs, executors, administrators and other legal representatives, and Employee's successors and assigns, and will be for the benefit of Employer, its successors, and its assigns.

(e)    Survival.  The provisions of this Agreement shall survive the termination of the Relationship and the assignment of this Agreement by Employer to any successor in interest or other assignee.

(f)    ADVICE OF COUNSEL.  EMPLOYEE ACKNOWLEDGES THAT, IN EXECUTING THIS AGREEMENT, EMPLOYEE HAS HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT LEGAL COUNSEL, AND EMPLOYEE HAS READ AND UNDERSTANDS ALL OF THE TERMS AND PROVISIONS OF THIS AGREEMENT. EMPLOYEE ACKNOWLEDGES AND UNDERSTANDS THAT THIS AGREEMENT IS NOT A CONTRACT OF EMPLOYMENT AND THAT EMPLOYER MAKES NO GUARANTEES OR REPRESENTATIONS CONCERNING EMPLOYEE'S EMPLOYMENT. THIS AGREEMENT SHALL NOT BE CONSTRUED AGAINST ANY PARTY BY REASON OF THE DRAFTING OR PREPARATION HEREOF.

(g)    Titles and Subtitles.  The titles and subtitles used in this Agreement are used for convenience only and are not to be considered in construing or interpreting this Agreement.

(h)    Assignment.  Employee shall not assign this Agreement.  Employer may assign this Agreement in connection with a transfer of: (i) the Business to an affiliate; and (ii) all or substantially all of the assets of Employee in which case, the provisions hereof shall be binding upon and inure to the benefit of the corporation or entity to which such assets are transferred.

(i)    Expenses of Enforcement.  In the event that any suit or legal proceeding is brought to enforce any provision of this Agreement, the prevailing party in such suit or proceeding shall be entitled to receive from the non-prevailing party all of such party's reasonable expenses, including reasonable attorney's fees and costs.

-6-

[SIGNATURE PAGE FOLLOWS]

-7-

IN WITNESS WHEREOF. the parties have executed this Agreement on the respective dates set forth below.

EMPLOYER:

LINGUALINX LANGUAGE
SOLUTIONS, INC.

By: _____

Name: David Smith

Date: ___1 / 10 / 07___

EMPLOYEE:

_____

By: _____

Name: _____

Date: ___10 Jan 07___

-8-

## EXHIBIT A

## TERMINATION CERTIFICATION

This is to certify that I do not have in my possession, nor have I failed to return, any devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, sketches, notebooks, flow charts, equipment, other documents or property, or copies or reproductions of any aforementioned items or similar items belonging to LinguaLinx Language Solutions, Inc. (the "Employer").

I further certify that I have complied with all the terms of Employer's Confidentiality and Noncompete Agreement signed by me.

I further agree that, in compliance with the Confidentiality and Noncompete Agreement, I will preserve as confidential all trade secrets, confidential knowledge, data or other proprietary information relating to products, processes, know-how, designs, programs, data bases, other original works of authorship, client lists, business plans, financial information, or other subject matter pertaining to any business of the Employer or any of its employees, clients, consultants or licensees.

I further agree that for two (2) years from the date of this Certificate, I shall not either directly or indirectly solicit, induce, recruit or encourage any of the Employer's employees or consultants to terminate their relationship with the Employer, or take away, hire or otherwise engage the services of such employees or consultants, or attempt to solicit, induce, recruit, encourage or take away, hire or otherwise engage the services of employees or consultants of the Employer, either for myself or for any other person or entity. Further, for a period of two (2) years from the date of this Certificate, I shall not solicit any client of the Employer or licensee of the Employer's services, in each case, that are known to me, with respect to any business, products or services that are competitive to the products or services offered by the Employer or under development as of the date of termination of my Relationship with the Employer.

EMPLOYEE:

_____

By: _____
Name: _____
Date: _____